Mason v Mason (2023 NY Slip Op 04018)

Mason v Mason

2023 NY Slip Op 04018

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, MONTOUR, OGDEN, AND GREENWOOD, JJ.

395 CA 22-00763

[*1]DYNISHA ENJOLI MASON, PETITIONER-RESPONDENT-APPELLANT,
v
RAKEEM TAMAR MASON, RESPONDENT-PETITIONER-RESPONDENT. 

LEGAL SERVICES OF CENTRAL NEW YORK, SYRACUSE (ANNE F. AUGUSTINE OF COUNSEL), FOR PETITIONER-RESPONDENT-APPELLANT.
STEPHANIE N. DAVIS, OSWEGO, ATTORNEY FOR THE CHILDREN. 

 Appeal from an order of the Supreme Court, Onondaga County (Joseph E. Lamendola, J.), entered May 6, 2022, in a proceeding pursuant to Family Court Act article 6. The order denied the petition seeking permission to relocate with the subject children. 
It is hereby ORDERED that the order so appealed from is reversed on the law without costs and the matter is remitted to Supreme Court, Onondaga County, for further proceedings in accordance with the following memorandum: In this proceeding pursuant to Family Court Act article 6, petitioner-respondent mother appeals from an order that denied her petition seeking permission to relocate with the subject children to North Carolina. We agree with the mother that the determination of Supreme Court that the proposed relocation to North Carolina is not in the children's best interests lacks a sound and substantial basis in the record.
The parties previously had joint custody of the children with primary physical custody with respondent-petitioner father in Onondaga County and visitation with the mother, who then lived in North Carolina. When the father relocated to Georgia with the children in 2018, the mother moved back to Onondaga County in order to pursue an enforcement petition with respect to the prior custody order (see generally Domestic Relations Law § 76-a [1]). The parties thereafter stipulated to a new custody order pursuant to which joint custody would continue but the mother would have primary physical custody in Onondaga County. The mother subsequently filed the present modification petition seeking permission to relocate with the children to North Carolina, and the father cross-petitioned to modify the prior order to grant him primary physical custody of the children, who would then live with him in Georgia.
Generally, when one parent petitions to relocate out of state, "the interests of a custodial parent who wishes to move away are pitted against those of a noncustodial parent who has a powerful desire to maintain frequent and regular contact with the child" (Matter of Tropea v Tropea, 87 NY2d 727, 736 [1996]). Thus, factors to consider in assessing a parent's request to relocate include "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child[ren] and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child[ren]'s future contact with the noncustodial parent, the degree to which the custodial parent's and child[ren]'s life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child[ren] through suitable visitation arrangements" (id. at 740-741; see Matter of Holtz v Weaver, 94 AD3d 1557, 1557 [4th Dept 2012]).
The present case, however, is not one in which the custodial parent "seeks permission to move away from the area in which the noncustodial spouse resides" (Tropea, 87 NY2d at 732). Instead, both parents petitioned to relocate the primary residence of the children away from Onondaga County and closer to the other parent's preferred state of residence. To that end, the record reflects that, consistent with the course charted in the petition and cross-petition, the [*2]parties stipulated that the scope of the hearing would be "the issues of what plans are in place supporting the children's move to either North Carolina or Georgia" (emphasis added). Nonetheless, for reasons that are not clear from the record, the evidence at the hearing was limited to the mother's request to relocate to North Carolina, which the court subsequently denied without considering or resolving the father's cross-petition seeking primary physical custody of the children, who would then live with him outside of New York state.
Even assuming, arguendo, that it was appropriate for the court to apply Tropea where both parents seek to relocate the children out of state, we conclude that the court failed "to consider and give appropriate weight to all of the factors that may be relevant to the determination" (id. at 740). The court's determination was based almost exclusively on the mother's purported failure to establish that the children would be better off economically and educationally in North Carolina than in Onondaga County. The court failed to consider the impact of the children's relocation to North Carolina on the quantity and quality of their future contact with the father in Georgia; the potential emotional benefit to the children of being substantially closer to the father; and the potential for greater "suitable visitation arrangements" between the children and the father in Georgia (id. at 741). Further, although whether a noncustodial parent has a good faith basis for opposing a requested move is a factor bearing on a relocation determination (see id. at 740-741), the record here is devoid of any basis, other than his desire to have the children reside with him in Georgia, for the father's opposition to the mother's request to move away from Onondaga County. We thus conclude that, in ruling on the mother's relocation petition without considering the father's pending cross-petition for primary physical custody of the children, the court failed to consider the mother's relocation request "with due consideration of all the relevant facts and circumstances," including the "central concern" of "the impact of the move on the relationship between the child[ren] and the [father]" (id. at 739 [emphasis added]).
Further, as previously noted, both parents petitioned to move the children's primary residence outside of New York state. In denying the mother's petition, the court gave weight to the children's purported preference to remain in Onondaga County, a primary residence in a state not pursued by either parent. We caution that " '[t]here is a significant difference between allowing children to express their wishes to the court and allowing their wishes' to chart the course of litigation" (Matter of Kessler v Fancher, 112 AD3d 1323, 1324 [4th Dept 2013]).
We therefore conclude that the determination lacks a sound and substantial basis in the record (see generally Holtz, 94 AD3d at 1558). Inasmuch as the record before us does not reflect whether or how the father's cross-petition was resolved, we remit the matter for a new hearing on the mother's petition and consideration of all the relevant facts and circumstances, including, if still pending, the father's cross-petition (see generally Matter of Mills v Rieman, 128 AD3d 1486, 1487 [4th Dept 2015]).
All concur except Ogden, J., who dissents and votes to affirm in the following memorandum: I respectfully dissent from the majority's conclusion that Supreme Court's determination to deny petitioner-respondent mother's relocation petition lacks a sound and substantial basis in the record. I would affirm the order.
Although the majority is correct that the present case is not the typical relocation case in which the custodial parent seeks permission to move away from the area in which the noncustodial parent resides, a factual determination of the best interests of the children, after consideration of the factors set forth in the governing case law, is nevertheless applicable.
In determining whether to permit a custodial parent to relocate with the children, "each relocation request must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (Matter of Tropea v Tropea, 87 NY2d 727, 739 [1996]).
The majority concludes that the record here is devoid of any basis, other than his desire to have the children reside with him in Georgia, for respondent-petitioner father's opposition to the mother's request to move. I disagree. After the mother rested her case, the father moved to dismiss the petition. His opposition to mother's relocation was made clear: the mother had not [*3]"laid forth a specific plan" and had not "been able to articulate . . . how the children
. . . would benefit" from the move.
I also disagree with the majority's impression that the court allowed the children's wishes to chart the course of litigation. The court concluded in its decision and order that the mother had failed to establish that the children would receive a better education in North Carolina, that her life with the children would be enhanced economically by the move, or that she had comparable support in North Carolina. Although the court recognized that the children preferred to remain in New York, it also noted that their preference was not dispositive.
Taking into account the applicable Tropea factors and considering all of the relevant facts and circumstances, I conclude that the mother failed to meet her burden of establishing by a preponderance of the evidence that relocation was in the best interests of the children (see id. at 741). Thus, I conclude that the court's determination had a sound and substantial basis in the record despite the atypical factual circumstances.
Finally, I note the majority's concern with the father's cross-petition to modify the prior order of custody to grant him primary physical custody of the children. I agree that the record before us does not reflect how the father's cross-petition was resolved or if it was resolved. Contrary to the majority's suggestion, that should not change the analysis. The mother had a full opportunity to be heard on her petition. The court conducted a full hearing on the mother's request, and all parties had an opportunity to present evidence and make arguments. I would not disturb the court's determination on the mother's petition simply because of the enigma concerning the father's cross-petition.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court